IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| SENITA LESLIE,<br><br>   Plaintiff,<br><br>v.<br><br>NESTLE PURINA PETCARE COMPANY,<br><br>   Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW Senita Leslie ("Plaintiff"), by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Defendant Nestle Purina Petcare Company ("Defendant") for violations of her rights under the Title VII of the Civil Rights Act of 1964.

1

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. § 2000e-5(f), and 28 U.S.C. §§ 1343.

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, and 42 U.S.C. §1981, venue is appropriate in this Court.

## ADMINISTRATIVE PREREQUISITES

4.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC), alleging retaliation under Title VII.

5.

Plaintiff received her Notice of Right to Sue on November 26, 2025. This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue" on that Charge.

## PARTIES

6.

Plaintiff is a citizen of the United States of America born and is subject to the jurisdiction of this Court.

7.

At all times relevant, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District. During all times relevant hereto, Defendant employed fisfteen (15) or more employees for the requisite duration under Title VII.

8.

Defendant may be served with process via its Registered Agent, C T Corporation System, at 289 S. Culver Street, Lawrenceville, GA 30046-4805.

## FACTUAL ALLEGATIONS

9.

Plaintiff was hired by Defendant as a Retort Operator in or about December 2023.

10.

Plaintiff's Supervisor, Cory, began to make sexual advances and comments to her in or about March 2024.

11.

Cory began telling Plaintiff that he checked off all of the things that Plaintiff wanted in a romantic partner and began asking her to on dates with him.

12.

Plaintiff made it clear to Cory immediately that she would not go on dates with him and that she was not romantically interested in him, but Cory continued to make these comments and ask Plaintiff to go on dates.

13.

As another example, right around the time Cory became married in or about April 2024, he told Plaintiff and another female employee that if they did not want him to get married, to just say so because they were "his girls."

14.

Cory also frequently commented on Plaintiff's Facebook posts about the clothes she was wearing and complaining that she did not invite him to go out with her at the places that she was posting pictures of her at one to two times a week until

Plaintiff blocked him from viewing her Facebook in or about May 2025 so that the comments would stop.

15.

Prior to May 2025, Plaintiff asked Cory to stop making these comments on her Facebook multiple times, but he continued to make the comments.

16.

Plaintiff also routinely witnessed Cory flirt with other women working for Defendant.

17.

In or about May 2025 or April 2025, Cory began to complain and ask Plaintiff in person specifically why she would not go on dates with him and why she would not invite him out with her friends on the weekends.

18.

Around this time, Cory also began telling Plaintiff that other employees had said Plaintiff used to be "real thick" and that she was not "thick like she was no more."

19.

In May 2025, when Plaintiff was talking to another coworker about her weight loss goals, Cory suddenly interrupted the conversation, describing Plaintiff as a

"little skinny self," and then even more jarringly, asking Plaintiff if she had ever sex with someone while holding her legs over their shoulders.

20.

Around this same time, Plaintiff learned from a coworker that Cory was spreading false rumors around the workplace that Plaintiff had asked him to go out with her and drink alcohol together, insinuating to others falsely that he was in some sort of romantic relationship with Plaintiff.

21.

As a result of this escalating behavior, Plaintiff went to Assistant Plant Manager Carl Weber in May 2025 and reported the sexual harassment.

22.

Weber told Plaintiff he would forward her complaint to Line Manager Stephen Miller.

23.

Plaintiff then met with Miller and reported the sexual harassment she had been subjected to by Cory.

24.

During this meeting, Cory told Plaintiff not to say anything to anyone about what she was reporting.

25.

After this meeting, Cory learned that Plaintiff had reported his sexual harassment of her to management.

26.

After this meeting, Cory would only meet with and speak with Plaintiff when another employee was present with him.

27.

Other employees also learned of Plaintiff complaints of sexual harassment and told her that Cory knew about her report of him.

28.

At that point, Cory began severely retaliating against Plaintiff.

29.

Cory began to routinely and deliberately write Plaintiff up for things he would not write other employees up for.

30.

This occurred even though Plaintiff continued to perform her job duties as she always had.

31.

Cory began to write Plaintiff up and blame her for calling Maintenance to solve technical machine issues.

32.

While Plaintiff would typically attempt to fix issues herself before calling Maintenance, the other Retort Operator, Hope, who had not reported Cory for sexually harassing her, would usually immediately call Maintenance if there was an issue but was never written up.

33.

Quality Managers were present in these write up meetings.

34.

During one of these meetings, while Cory was writing Plaintiff up, one Quality Control Manager called Bird said to Cory that Hope's name was also on the document that Cory was using to write Plaintiff up and that he would have to write Hope up as well if he was going to do so with Plaintiff.

35.

At that point, Cory said he would just let the situation go and not give Plaintiff a writeup.

36.

Cory did so because he was specifically targeting Plaintiff with writeups for reporting his sexual harassment of her.

37.

After this meeting occurred, Bird asked Plaintiff if Cory was attempting to get her fired because of what had just occurred and Plaintiff reported to Bird that she believed he was and that he was doing so because of her reports of him sexually harassing her.

38.

At that point, Bird then confided in Plaintiff that Cory had recently been coming to her attempt to try and write up Plaintiff constantly and that she had even told Cory that he needed to cease that behavior and that he could not just spend his workday attempting to find things to write up Plaintiff for.

39.

Then, on July 14, 2025, Cory called Plaintiff into the office with another Supervisor present and terminated her, telling her that Defendant had decided to let her go and that he had counseled her on her performance several times.

40.

July 14, 2025, was less than two months after Plaintiff had reported Cory's sexual harassment of her.

41.

Between her report and termination, Cory wrote Plaintiff up or attempted to write Plaintiff up five to seven times.

42.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text. Plaintiff was treated less favorably in the terms or conditions of employment than others outside of her protected class, i.e. individuals that had not reported being sexually harassed.

**CLAIMS FOR RELIEF**
**COUNTS I:  RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

43.

Plaintiff repeats and re-alleges the allegations contained in paragraphs 9-42 as if set forth fully herein.

44.

Title VII prohibits employers from taking adverse actions against employees for engaging in protect activity.

45.

Plaintiff engaged in protected activity under Title VII when she reported that she was being sexually harassed by Cory.

46.

Plaintiff was terminated for her protected activity.

47.

In terminating Plaintiff because of her protected activity, Defendant violated Plaintiff's rights under Title VII, entitling her to all appropriate relief thereunder.

48.

As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress and other non-pecuniary damages, as well as economic damages, for which she is entitled to recover from Defendant.

49.

Defendant acted with malice and reckless indifference to Plaintiff's federally protected rights. Plaintiff seeks punitive damages as a result of Defendant's violations of Title VII.

## COUNT II: RETALIATORY HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

50.

Plaintiff realleges Paragraphs 9-42 as if set forth fully herein.

51.

Title VII prohibits employers like Defendant from discriminating against employees on the basis of their sex in the terms and conditions of their employment.

52.

Plaintiff engaged in protected activity under Title VII, *inter alia*, when she complained that she was being sexually harassed.

53.

Defendant and its managers harassed and retaliated against Plaintiff on a consistent basis after and because of her protected activity.

54.

The harassment Plaintiff was subjected to would have dissuaded a reasonable worker from engaging in protected activity.

55.

Defendant knew or should have known of the hostile work environment but failed to take prompt or appropriate corrective action, instead condoning or participating in the harassment.

56.

As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered damages, including lost wages and emotional distress.

57.

Defendants willfully and wantonly disregarded Plaintiff's rights, and its actions toward Plaintiff were undertaken in bad faith. Plaintiff is therefore entitled to punitive damages.

58.

Defendant is liable for the actions of its employees and supervisors.

59.

Plaintiff is entitled to punitive damages, lost wages and benefits, compensatory damages, attorneys' fees and costs, prejudgment interest,

reinstatement or front pay in lieu thereof, and any other relief available under the law.

**WHEREFORE**, Plaintiff judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Special damages for lost wages and benefits and prejudgment interest thereon;

(c) Punitive damages on Plaintiff's claims;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i) All other relief to which she may be entitled.

This 19th day of December, 2025.

**THE WORKERS' FIRM**

/s/ V. Severin Roberts, Esq
V. Severin Roberts
Georgia Bar No. 940504
Patrick Reid
Georgia Bar No. 888769
The Workers' Firm
7000 Central Parkway, Suite 1000
Atlanta, GA 30328
(404)-382-9660
severin@theworkersfirm.com
patrick@theworkersfirm.com

Counsel for Plaintiff